Jane Doe,

Plaintiff in Pro Per

```
FILED
CLERK, U.S. DISTRICT COURT
03/16/2025
CENTRAL DISTRICT OF CALIFORNIA
BY        EC        DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM
```

**REDACTED VERSION (PUBLIC FILING)**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

Jane Doe,

**Plaintiff,**

2:25-cv-02371-JFW(JPRx)

**vs.**

Kaiser Foundation Health Plan INC,

**Defendant.**

**COMPLAINT FOR DAMAGES:**

1. Discrimination under the Americans with Disabilities Act (ADA)
2. Retaliation under Title VII of the Civil Rights Act
3. Failure to Accommodate under the ADA
4. Hostile Work Environment under Title VII
5. Sex-Stereotyping Discrimination under Title VII
6. National Origin Discrimination under Title VII
7. Wrongful Termination under Title VII, §1981, and ADA

**Case No.:** [To be supplied by the Clerk]

**Jury Trial Demanded** ☒ Yes ☐ No

Complaint for Damages and Demand for Jury Trial

## INTRODUCTION

1. Plaintiff ✕✕✕✕✕✕✕✕ is a registered nurse licensed in California since 2013, with extensive expertise in case management roles at prestigious hospitals, including prior employment at Kaiser Permanente Los Angeles Medical Center ✕✕✕✕✕✕. Plaintiff alleges discrimination based on race, national origin, disability, marital/family status, retaliation, hostile work environment, and failure to accommodate under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA).

2. Kaiser Foundation Health Plan,INC has a documented history of systemic discrimination, retaliation, and inadequate protection of its employees. Notably, recent sexual assault incidents at Kaiser Riverside Medical Center (2024) involving nurse Jacob Daniel Hartman and similar misconduct at San Rafael facility highlight Kaiser's longstanding institutional failures. Furthermore, Kaiser's history includes high-profile class-action lawsuits alleging systemic racial discrimination against Black and Latino employees, particularly barriers to leadership roles and equal pay.

## I. JURISDICTION

Complaint for Damages and Demand for Jury Trial

1. This court has jurisdiction under 28 U.S.C. §133. Federal question
   jurisdiction arises pursuant to Title VII of the Civil Rights Act of 1964
   (42 U.S.C. § 2000e et seq.), and the Americans with Disabilities Act
   (ADA), 42 U.S.C. §12101 et seq.

## II. VENUE

2. Venue is proper under 28 U.S.C. §1391(b) because the events giving
   rise to this complaint happened in this district.

## III. PARTIES

3. Plaintiff ████████████ resides in Los Angeles County, California,
   and is a Registered Nurse licensed since ████, with significant case
   management experience, including employment at Kaiser
   Permanente ██████████████████████.

4. Defendant Kaiser Foundation Health Plan, INC resides at One Kaiser
   Plaza, 5th Fl, Oakland, CA 94612

5. Defendant Kaiser Foundation Health Plan,INC operates multiple
   healthcare facilities across California, including ██████████████
   ████.

## IV. STATEMENTS OF FACTS

## PLAINTIFF'S PROFESSIONAL QUALIFICATIONS AND ADVOCACY BACKGROUND

5.    Throughout her professional and academic career, Plaintiff has consistently demonstrated exceptional dedication, integrity, and leadership:

5.1.    Licensed as a Registered Nurse since ▓▓▓▓▓▓▓▓, Plaintiff passed the NCLEX-RN licensure exam on her first attempt in just **88 questions**, highlighting her competence and diligence.

5.2.    She was awarded the ▓▓▓▓▓▓▓▓ by ▓▓▓▓▓ ▓▓▓▓▓▓▓▓, recognizing her resilience and exceptional drive.

5.3.    Beyond nursing, Plaintiff's commitment to advocacy is evidenced by her role as the ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ at ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓, and internships with both the ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ and the **C**▓▓▓▓▓▓▓▓▓▓ positions entrusted to students demonstrating strong character, accountability, and professionalism.

5.4.   Further, as a state-certified Sexual Assault Counselor for ▨▨▨ ▨▨▨▨▨▨▨, Plaintiff advocated tirelessly for vulnerable survivors, frequently responding to crisis situations to protect survivors' rights and dignity.

5.5.   Plaintiff's extensive record underscores her unwavering work ethic, integrity, and longstanding dedication to supporting marginalized and underrepresented communities.

## PLAINTIFF'S EMPLOYMENT RELATIONSHIP WITH NOMAD HEALTH & KAISER RIVERSIDE MEDICAL CENTER

6.   Plaintiff was employed by **Nomad Health**, a healthcare staffing agency that specializes in placing qualified nurses and healthcare professionals into temporary or contract-based assignments at hospitals and healthcare facilities nationwide.

7.   Through Nomad Health, Plaintiff was contracted to work at **Kaiser Permanente R**▨▨▨▨▨▨▨▨▨▨ as a specialized **Emergency Room (ER) RN Case Manager**, working four consecutive 10-hour weekend shifts (Friday through Monday) from **8:00 PM to 6:30 AM**.

8.  Although Nomad Health managed Plaintiff's contract placement and employment onboarding, Kaiser Permanente ▓▓▓▓▓▓ ▓▓▓ exclusively supervised Plaintiff's day-to-day duties, controlled Plaintiff's working conditions, scheduling, accommodations, and employment decisions, and directly managed Plaintiff's work environment.

9.  Kaiser Permanente ▓▓▓▓▓▓▓▓▓ had full authority over Plaintiff's daily tasks, employment terms, and ultimately made the decisions leading to Plaintiff's discriminatory treatment and wrongful termination.

10. Plaintiff was employed by **Kaiser Foundation Health Plan, Inc.** as a specialized **Registered Nurse (RN) Case Manager** assigned exclusively to the **Emergency Room (ER)**.

11. Plaintiff worked four 10-hour shifts per week, scheduled every weekend (Friday through Monday) from **8:00 PM to 6:30 AM**.

12. As an ER RN Case Manager, Plaintiff's specialized responsibilities included:

    12.1.   Conducting rapid assessment, triage, and care coordination for patients requiring emergency medical treatment and discharge planning.

Complaint for Damages and Demand for Jury Trial

12.2.    Collaborating with ER physicians, nurses, and interdisciplinary teams to create immediate and follow-up care plans ensuring patient safety, continuity, and appropriate resource utilization.

12.3.    Coordinating patient admissions, discharges, and transfers, ensuring compliance with regulatory standards and hospital policies.

12.4.    Advocating directly for patient needs, including arranging timely outpatient follow-up care, medical equipment, and necessary social services after discharge from the ER.

12.5.    Documenting critical patient care decisions, case management interventions, and discharge instructions accurately and efficiently in the electronic health record (EHR).

12.6.    Providing specialized consultation to ER physicians and nurses regarding case management procedures, discharge protocols, and resource coordination for complex patient cases.

12.7.    Collaborating directly with on-call hospital administration and interdisciplinary teams during overnight weekend shifts, ensuring patient safety and optimal discharge planning during high-stakes emergency scenarios.

## PLAINTIFF'S PRIOR SUCCESSFUL EMPLOYMENT HISTORY WITH

## KAISER PERMANENTE

13.    Plaintiff's professional relationship with Kaiser Permanente began
approximately in ████████ when she was initially employed as a
Travel RN Case Manager through a healthcare staffing agency.

14.    Due to Plaintiff's demonstrated professionalism, adaptability, and
reliability, she was cross-trained and transitioned by Kaiser into a
specialized role as an Emergency Department (ED) RN Case
Manager at Kaiser Permanente ██████████████████████,
working two 12-hour overnight shifts per week (7:00 PM to 7:30 AM)
from approximately 2015 to 2017.

15.    Plaintiff maintained a designated shared office within the ED,
equipped with two computer screens in an enclosed office space,
which reduced noise distractions and facilitated productivity and
patient care coordination.

16.    Plaintiff subsequently accepted a per diem RN Case Manager
position at ████, which ended in ✕✕✕✕✕ due to an expired Basic
Life Support (BLS/CPR) certification during a period of significant
personal hardship, including the loss of a close family member.

17.  Prior to this termination, Plaintiff had maintained a clean disciplinary record without performance issues and was frequently requested by management to cover challenging overnight shifts, reflecting her reliability and competence.

18.  The Emergency Department RN Case Manager role held by Plaintiff was a critical and highly visible position involving complex decision-making responsibilities.

19.  Plaintiff frequently served as the final authority in coordinating patient transfers to higher-level care, authorizing patient admission status upgrades or downgrades, managing complex placements for behavioral health patients, and efficiently triaging and coordinating essential durable medical equipment (such as walkers, nebulizers, and portable oxygen tanks) for timely patient discharges to skilled nursing facilities.

20.  Plaintiff's proven ability to successfully manage these high-stakes responsibilities for several years directly refutes any assertion by opposing counsel regarding Plaintiff's qualifications or capability to perform an identical role at Kaiser Permanente ▨▨▨▨▨▨ ▨▨▨ as of ▨▨▨▨▨▨.

21.  Plaintiff briefly returned to Kaiser Permanente in ▆▆▆▆▆ as a Travel RN COVID-19 Vaccinator at Kaiser Permanente ▆▆▆▆▆▆ ▆▆▆▆▆▆▆ through AMN Healthcare, further reinforcing Kaiser's continued willingness to engage her professional services based on her established credibility and prior success within their healthcare system.

## DEMOGRAPHIC FACTORS AND WORKPLACE INTERACTIONS

22.  Plaintiff observed that during her employment at Kaiser Permanente Riverside Medical Center, she was the only Black RN Case Manager assigned to the Emergency Department night shift.

23.  Plaintiff further observed that several individuals involved in management decisions, including her direct supervisor ▆▆▆▆▆▆, Director of Case Management ▆▆▆ (last name unknown), a visiting Manager of Case Management from Kaiser ▆▆▆▆▆▆▆▆, and coworker RN ▆▆▆▆▆▆▆▆, shared the same ethnic background (Filipino).

24.  During her assignment, Plaintiff experienced repeated incidents of coworkers mispronouncing her ▆▆▆▆ name ▆▆▆▆▆▆▆ ▆▆▆▆▆▆, despite her corrections.

25. To facilitate easier pronunciation, Plaintiff provided coworkers with a shortened nickname, ▨▨▨▨▨▨, reducing it from three to two syllables.

26. Despite this accommodation, coworkers continued to mispronounce her name. Plaintiff noted that colleagues readily learned and consistently correctly pronounced the names of non-Black staff members.

27. These experiences contributed significantly to Plaintiff's sense of isolation and perception of a hostile and discriminatory work environment.

28. Plaintiff observed differences in how her reserved demeanor was perceived compared to similar behavior exhibited by non-Black colleagues, further contributing to her sense of **alienation** and **exclusion** in the workplace.

29. Additionally, Plaintiff encountered significant difficulties obtaining clear guidance from management or HR on reporting workplace concerns, which limited her ability to effectively address and resolve these ongoing issues.

## DEFENDANT'S DISCRIMINATORY AND HARASSING TREATMENT OF PLAINTIFF

30.   Throughout her employment, Plaintiff was subjected to persistent

discriminatory treatment primarily by ████████████████,

including public mocking of Plaintiff's disabilities, humiliating behavior,

and unfair workload assignments.

31.   Campos regularly engaged in racial microaggressions, including

intentional mispronunciations of Plaintiff's Nigerian name.

**PLAINTIFF'S REQUEST FOR ACCOMMODATIONS & DEFENDANT'S**

**FAILURE TO ENGAGE IN THE ADA INTERACTIVE PROCESS**

32.   On ████████████, Plaintiff explicitly requested ADA

accommodations via email due to her documented disabilities.

33.   Kaiser management, specifically ████████, ignored and failed to

engage meaningfully in the interactive accommodation process

required by the ADA.

**HOSTILE WORK ENVIRONMENT BASED ON FAMILY AND**

**CAREGIVING STATUS**

34.   Plaintiff faced discriminatory and inappropriate remarks from

coworkers and supervisors regarding her marital and family status.

35.   Plaintiff was explicitly told by coworkers that, as a single woman without children, she had no reason to experience fatigue, disregarding Plaintiff's previously disclosed caregiving responsibilities toward her elderly mother.

36.   Plaintiff's mother, a retired Registered Nurse with over 25 years of service at the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, a Family Nurse Practitioner, and former Per Diem Nursing Administrative Office RN at ▓▓▓▓▓▓▓▓▓▓ for over 10 years, was homebound due to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ during the relevant period (approximately ▓▓▓ through ▓▓▓▓▓).

37.   These dismissive and stereotyping remarks by coworkers contributed to a hostile and discriminatory work environment, exacerbating Plaintiff's distress amid an already challenging caregiving situation.

## RETALIATORY TERMINATION OF PLAINTIFF'S EMPLOYMENT

38.   Following Plaintiff's explicit request for accommodations and reporting of discriminatory conduct, Defendant abruptly terminated Plaintiff's employment contract on ▓▓▓▓▓▓.

## INACCESSIBILITY OF KAISER'S INTERNAL COMPLAINT REPORTING SYSTEMS

39.   Plaintiff experienced significant challenges in accessing appropriate Human Resources (HR) channels to formally report workplace concerns at Kaiser Permanente ████████████████.

40.   HR contact information was neither easily accessible nor clearly posted for employees. Plaintiff made multiple attempts to email HR using available email addresses she located independently.

41.   Unable to obtain a timely response, Plaintiff resorted to calling a difficult-to-find employee-concerns hotline number, which led to an HR voicemail recording that phonetically spelled out an email address for complaints.

42.   Despite using the provided address, Plaintiff received no acknowledgment or response via email.

43.   Approximately one week after Plaintiff's abrupt termination, an HR representative from Kaiser finally returned Plaintiff's call and confirmed that Kaiser Permanente's policy is to handle employee complaints solely through telephone conversations rather than email, effectively limiting employees' ability to document their complaints formally.

44.   This procedure directly contributed to Plaintiff's difficulty in demonstrating prior attempts to raise workplace concerns.

45.    Additionally, Plaintiff's supervisor, ▨▨▨▨▨▨, did not respond to

two separate text messages and an email regarding Plaintiff's

complaints about workplace harassment and inappropriate treatment

from RN ▨▨▨▨.

46.    Plaintiff also notified Nomad Health's HR professional, ▨▨▨▨▨, of

these unresolved concerns around ▨▨▨▨▨▨, as well as their

Clinical Nurse Liaison ▨▨▨▨ before Plaintiff's termination, further

evidencing Plaintiff's diligent attempts to raise workplace issues prior

to termination.

47.    At the time of her termination on ▨▨▨▨▨▨, Plaintiff had

approximately three weeks remaining on her employment contract,

representing a financial loss valued at less than $20,000.

## POST-TERMINATION RETALIATION AND SYSTEMIC REJECTION
## FROM KAISER EMPLOYMENT OPPORTUNITIES

48.    Since filing EEOC charges, Plaintiff applied to over 20 positions

across Kaiser Permanente locations, predominantly in per diem,

full-time, and leadership roles within case management.

49.   Despite Plaintiff's extensive qualifications, Kaiser repeatedly rejected these applications, citing insufficient experience, evidencing systemic retaliatory practices.

## SYSTEMIC ISSUES AND PRIOR LITIGATION

50.   Kaiser Permanente has a significant documented history of failing to protect employees from harassment and discrimination. Recent cases include a sexual assault incident involving RN Jacob Daniel Hartman at Kaiser Riverside Medical Center (2024), and another serious sexual assault incident at Kaiser San Rafael.

51.   Additionally, Kaiser faced a notable class action lawsuit filed by Black and Latino employees in 2021, alleging systemic barriers to leadership roles and equitable pay.

## V. CLAIMS

## CLAIM 1: Discrimination under the Americans with Disabilities Act (ADA)

42 U.S.C. §12112(a)

*(Plaintiff was discriminated against based on her disability,*  *and* 

52.  Plaintiff alleges discrimination under the ADA due to Defendant Kaiser's failure to address Plaintiff's clearly documented disabilities (██████████). Plaintiff explicitly requested ADA accommodations via email around ████████.

53.  Despite this, Kaiser management, specifically supervisor ████ ███, failed to respond or engage in the required interactive process. Plaintiff subsequently experienced termination approximately one week after raising these concern

### CLAIM 2: Retaliation under Title VII of the Civil Rights Act

42 U.S.C. §2000e-3(a)
*(Retaliatory termination following protected complaints and accommodation requests.)*

54.  Plaintiff alleges retaliation under Title VII following her explicit request for ADA accommodations and reporting of discriminatory treatment, including workplace harassment by RN █████.

55.  Kaiser terminated Plaintiff's employment contract abruptly on ████ ███, approximately one week following Plaintiff's accommodation requests, resulting in a financial loss of less than $20,000.

56.    Following termination and EEOC filing, Plaintiff applied to over 20 positions within Kaiser Permanente, predominantly within case management roles.

57.    Despite extensive prior successful employment history and qualifications, all applications were rejected, citing insufficient experience, suggesting retaliatory intent.

## CLAIM 3: Failure to Accommodate under the ADA

### 42 U.S.C. §12112(b)(5)(A)

(Specifically covers refusal or failure to provide reasonable accommodations.)

58.    Plaintiff explicitly requested ADA accommodations due to documented disabilities (▨▨▨▨▨▨▨ around   ▨▨▨▨▨, ▨▨▨.

59.    Despite multiple attempts to communicate these needs via email and Nomad Health's HR professional ▨▨▨▨▨, Kaiser management, specifically supervisor ▨▨▨▨▨, failed to respond or meaningfully engage in an interactive accommodation process.

## CLAIM 4: Hostile Work Environment under Title VII

42 U.S.C. §2000e-2(a)

(Harassment due to race/national origin, creating a hostile environment.)

60.    Plaintiff alleges a hostile work environment created by persistent and
       ongoing harassment primarily by coworker RN ██████████
       ██████.

61.    Harassment included repeated intentional mispronunciations of
       Plaintiff's ██████ name despite correction, derogatory comments
       regarding Plaintiff's disabilities, public mocking, unfair workload
       distribution, and open mocking of Plaintiff's comments regarding
       patient care, all of which significantly impacted Plaintiff's work
       experience.

62.    Additionally, Plaintiff's reserved personality was negatively perceived
       differently from similar behaviors exhibited by non-████colleagues,
       exacerbating Plaintiff's experiences of alienation and exclusion.

### CLAIM 5: Sex-Stereotyping Discrimination under Title VII

42 U.S.C. §2000e-2(a)

(Sex-based discrimination covers sex-stereotyping.)

63.    Plaintiff alleges sex-stereotyping discrimination by coworkers who
       explicitly stated that as a single, childless woman, she had no valid
       reason to experience fatigue.

64.    These remarks ignored Plaintiff's previously disclosed caregiving responsibilities for her elderly mother diagnosed with ██████ ██████, which further intensified her distress and workplace discomfort.

## Claim 6: National Origin Discrimination under Title VII

### (42 U.S.C. §2000e-2(a))

(Plaintiff alleges discriminatory treatment based on her N████ ████ national origin.)

65.    Plaintiff alleges discrimination based on national origin, supported by the persistent, deliberate mispronunciations of her ████████ name, "████████," despite corrections and providing an easier two-syllable nickname ("███").

66.    These actions contrasted notably with coworkers' ability and willingness to correctly pronounce names of non-████ colleagues, contributing significantly to Plaintiff's perception of discriminatory treatment and isolation.

## CLAIM 7: Wrongful Termination under Title VII, §1981, and ADA

**Title VII:** 42 U.S.C. §2000e-2(a) (race/national origin)
**42 U.S.C. §1981** (Race-based wrongful termination, contracting discrimination)

### ADA, 42 U.S.C. §12112(a) (Disability-based wrongful termination)

67.    Plaintiff alleges wrongful termination directly related to protected statuses (disability, race, national origin), retaliation for her ADA accommodation requests, and prior discrimination reports.

68.    In addition to the immediate financial loss of $20,000 from premature contract termination, Plaintiff has suffered ongoing economic harm due to systemic rejection from all Kaiser job applications following her EEOC filing, evidencing blacklisting and continued retaliation.

### CLAIM 8: Failure to Engage in the Interactive Process (ADA)

### 42 U.S.C. § 12112(b)(5)(A)

(Failure to engage in the required interactive process to determine reasonable accommodations.)

69.    Plaintiff is a qualified individual with a disability under the ADA, as she has ▓▓▓▓▓▓▓▓, which affect her ability to function in high-stimulation environments without reasonable accommodations.

70.    On ▓▓▓▓▓▓▓, Plaintiff formally requested reasonable accommodations under the ADA. However, Defendant failed to engage in the legally required interactive process, offering no discussion, assessment, or alternative solutions.

71.     Defendant did not attempt to discuss, explore, or propose any reasonable accommodations. Approximately ▒▒▒▒▒ **after making this request, Plaintiff was abruptly terminated**.

72.     This failure to engage in the interactive process, coupled with the subsequent termination, constitutes a clear violation of the ADA.

### CLAIM 9: Interference with Contractual Relations (Section 1981)

### 42 U.S.C. § 1981

(Defendant interfered with Plaintiff's right to contract free from racial discrimination.)

73.     Plaintiff, a ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒**descent**, is a protected individual under **42 U.S.C. § 1981**, which ensures equal rights to contract and employment free from racial discrimination.

74.     Plaintiff was **contracted through Nomad Health** but performed work directly under Defendant's control at **Kaiser Permanente** ▒▒▒▒ ▒▒▒▒▒▒▒.

75.     Defendant exercised **exclusive authority over her work environment, schedule, and employment decisions**, despite her being employed through a third party. While working at Kaiser,

76. Plaintiff **experienced racial microaggressions and discriminatory treatment**, including **repeated deliberate mispronunciations of her** ▨▨▨▨ **name despite corrections**, a **pattern of dismissiveness by management**, and **different treatment compared to non-**▨▨ **colleagues**.

77. Defendant's actions **directly interfered with Plaintiff's contractual employment** by **terminating her prematurely before her contract's natural expiration**, thereby preventing her from receiving the full financial and professional benefits of her agreement with Nomad Health.

78. Plaintiff suffered **economic damages and reputational harm** as a result of Defendant's racially motivated interference.

## CLAIM 10: Constructive Discharge (Title VII, ADA)

### 42 U.S.C. § 2000e-2(a) (Title VII), 42 U.S.C. § 12112(a) (ADA)

(Work conditions were so intolerable that a reasonable person would feel compelled to resign.)

79. Plaintiff was subjected to a **severe and persistent hostile work environment**, including **racial discrimination, disability discrimination, and retaliation**.

80. Throughout her employment, Plaintiff's coworkers and supervisors engaged in **discriminatory conduct**, including **mocking her disabilities, making disparaging remarks about her caregiving responsibilities, and treating her differently than non-**▨▨▨ **employees**.

81. Her coworker, ▨▨▨▨▨▨▨▨▨▨▨, publicly ridiculed her in front of others, assigned her **unfairly difficult workloads**, and created a **toxic and humiliating work environment**.

82. Plaintiff's attempts to seek intervention from **HR and management were met with silence, obstruction, or indifference**, making it **impossible for her to resolve the hostile work environment internally**.

83. Due to this **sustained mistreatment, lack of remedial action, and retaliatory conduct**, Defendant's actions made the working conditions **so intolerable that a reasonable person would feel forced to leave**. This constructive discharge was unlawful under both **Title VII and the ADA**.

84. A reasonable person in Plaintiff's position would have no option but to resign under these conditions, as Defendant's deliberate inaction made continued employment impossible.

## CLAIM 11: Failure to Prevent Discrimination, Harassment, and

## Retaliation (Title VII, ADA)

### 42 U.S.C. § 2000e-2(a) (Title VII), 42 U.S.C. § 12112(a) (ADA)

(Defendant failed to take reasonable steps to prevent discrimination,

harassment, and retaliation in the workplace.)

85.    Defendant was aware, or should have been aware, of the **ongoing
discrimination, harassment, and retaliation against Plaintiff** and
failed to take appropriate remedial action.

86.    Plaintiff **repeatedly reported workplace mistreatment** to **Nomad
Health's HR (**⬛⬛⬛**), Clinical Nurse Liaison (**⬛⬛⬛**), and
her direct supervisor,** ⬛⬛⬛.

87.    Plaintiff **emailed, texted, and called management** to report the
**hostile work environment, disability-based harassment, and
retaliation**, yet no meaningful action was taken to address her
concerns.

88.    Defendant **failed to provide a clear or accessible HR complaint
process**, further obstructing Plaintiff's ability to document and
address workplace issues.

89.    Instead of taking corrective action against the **harassers and discriminatory conduct**, Defendant **terminated Plaintiff in retaliation for reporting the misconduct**.

90.    Defendant's inaction and failure to prevent discrimination and retaliation directly contributed to Plaintiff's unlawful termination, causing **emotional distress, financial harm, and reputational damage**.

## VI. REQUEST FOR RELIEF

**91.    Plaintiff seeks:**

91.1.    Compensatory damages for emotional distress, economic loss, and future harm;

91.2.    Punitive damages sufficient to punish Defendant and deter future misconduct.

91.3.    Injunctive relief requiring Kaiser Foundation Health Plan, INC. to implement training addressing ADA compliance, neurodiversity, and workplace anti-discrimination policies.

91.4.    Mandatory third-party oversight of Kaiser's HR complaint process.

91.5.  Reforms ensuring contract nurses receive the same anti-discrimination protections as full-time employees.

91.6.  Reinstatement, including compensation for contractual losses (~$20,000) and guarantees against retaliation.

91.7.  Reasonable attorney's fees, expert witness fees, litigation expenses.

91.8.  Any additional relief deemed appropriate by the Court.

## VII. DAMAGES AND DISCOVERY

92.  Plaintiff reserves the right to amend damages amounts pending discovery and anticipates the need to subpoena witnesses and expert testimony to substantiate claims fully.

## VIII. DEMAND FOR JURY TRIAL

93.  Plaintiff demands a jury trial on all triable issues.

94.  An independent review and monitoring system for Kaiser's complaint handling process to ensure proper documentation and tracking of discrimination, harassment, and retaliation claims.

Dated: 3/16/25

By: Jane Doe

Plaintiff in Pro Per

EXHIBITS Exhibit A: EEOC Right-to-Sue Letter

Plaintiff reserves the right to supplement this complaint through discovery.

## REDACTED VERSION (PUBLIC FILING)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Jane Doe,

v.

KAISER FOUNDATION HEALTH PLAN, INC.,
Defendant.

**Case No.:**


**EXHIBIT A**

EEOC Right To Sue Letter

REDACTED VERSION (PUBLIC FILING)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Los Angeles District Office**
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/16/2024

**To:** ▮▮▮▮▮▮▮▮▮▮▮▮
1▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Charge No: ▮▮▮▮▮▮▮▮▮▮

EEOC Representative and email:    CHANGKI LEE
Investigator
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: ▮▮▮▮▮▮▮▮▮▮▮▮
12/16/2024

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

**Cc:**
Robyn A Sembenini
KAISER FOUNDATION HEALTH PLAN, INC.
One Kaiser Plaza 5th Floor
Oakland, CA 94612

Troy Valdez
DLA Piper LLP (US)
555 MISSION ST STE 2400
San Francisco, CA 94105


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2024-03696 to the

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 480-2024-03696 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)**

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

> **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

> In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

> **Only one** major life activity need be substantially limited.

> Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

**are not considered** in determining if the impairment substantially limits a major life activity.

An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

"Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note:* *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**REDACTED VERSION (PUBLIC FILING)**

Jane Doe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Jane Doe,
Plaintiff, Pro Se

v.

KAISER FOUNDATION HEALTH PLAN, INC.,
Defendant.

**Case No.:**



**Court ADA Accommodation Letter**

March 11, 2025

To Whom It May Concern,

I am writing to verify that ▨▨▨▨▨▨▨ is currently under my care fo ▨▨▨▨▨▨ and ▨▨▨▨▨. Due to these conditions, ▨▨▨▨▨▨ faces significant challenges related to sensory processing, communication, executive functioning, and managing environmental stressors. These challenges can be particularly exacerbated in the high-stress, sensory-intensive environments of state and federal court proceedings.

Specifically, ▨▨▨▨▨▨▨ experiences difficulty interpreting verbal instructions in real-time, managing sensory overload from auditory stimuli, maintaining attention and focus during prolonged interactions, and effectively communicating in high-pressure environments. Additionally, direct verbal interactions or confrontational settings can exacerbate ▨▨▨ and impair cognitive functioning, resulting in decreased ability to clearly express thoughts and respond appropriately.

To ensure equitable participation and effective self-representation during legal proceedings, ▨▨▨▨▨▨ requires specific accommodations under the Americans with Disabilities Act (ADA).

Recommended court accommodations include:

### Sensory & Environmental Accommodations

1. **Permission to use noise-canceling headphones or earplugs** in the courtroom to mitigate sensory overload.
2. **Access to a quiet, private space during breaks** to regroup and manage sensory or emotional overload.
3. **Permission to wear tinted glasses or use a glare-reducing screen** to reduce sensory strain from bright courtroom lighting or electronic screens.
4. **Seating near the exit or in a designated quiet area** to prevent sensory overwhelm and allow for discreet breaks.
5. **Flexible dress code adjustments**, allowing soft, comfortable clothing instead of restrictive formalwear if it causes sensory distress.
6. **Permission to use a portable fan or cooling device** during proceedings to regulate body temperature and manage discomfort.

### Cognitive Processing & Communication Accommodations

7. **Regular breaks during proceedings, at intervals of approximately every 60-90 minutes**, to manage stress, fatigue, and sensory processing needs.
8. **Allowance for extended time to process questions, responses, and court instructions**, ensuring full comprehension before responding.
9. **Availability of written transcripts or real-time captioning services** to facilitate understanding and retention of verbal communications.
10. **Advance notice of any courtroom changes** (layout adjustments, schedule modifications, or judge substitutions) to reduce unpredictability and distress.
11. **Permission to take notes or use speech-to-text tools** to aid in comprehension and recall of court discussions.

### Executive Functioning & Time Management Accommodations

12. **A 15-minute grace period for arriving to court hearings** due to executive functioning challenges related to AuHD, ensuring full participation without undue distress.
13. **A digital or written schedule provided in advance**, outlining key courtroom proceedings, deadlines, and expected durations.
14. **Reminders of upcoming deadlines and procedural requirements**, either through electronic notifications or written updates from the court clerk.

### Social & Nonverbal Communication Accommodations

15. **Acknowledgment that facial expressions may not align with intent or credibility** due to autism-related facial blindness, and that assumptions should not be made based on nonverbal cues.

16. **Recognition that fidgeting, stimming, or movement aids focus and regulation**, and should not be misinterpreted as distraction, nervousness, or disrespect.
17. **Restriction of communication with defendants to email or written objections**, reducing anxiety and improving clarity of communication.

## Alternative Court Participation Options

18. **Permission to conduct trials or hearings virtually or entirely through written submissions**, minimizing sensory and communication-related stressors.
19. **Structured breaks during emotionally charged discussions**, particularly when discussing personal discrimination or distressing events, to allow for emotional regulation.
20. **Permission to provide written responses for complex or multi-step verbal questions**, ensuring accuracy and preventing processing overload.
21. **A written summary of courtroom proceedings at the end of each day**, summarizing key points to support retention and understanding.

These accommodations are medically recommended to ensure that ▨▨▨▨▨▨ can effectively participate in legal processes while mitigating the impact of their diagnosed ▨▨▨▨▨▨ disabilities. ▨▨▨▨▨▨ has been my patient under my care with Grow Therapy and then Rula, since ▨▨▨ to current.

Thank you for your consideration and prompt implementation of these accommodations.

Sincerely,

X _Samantha Tatum_

Samantha Tatum, LCSW
Licensed Clinical Social Worker- CA

Samantha Tatum, LCSW
Rula 323-918-4177
statumlcsw@gmail.com

## REDACTED VERSION (PUBLIC FILING)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Jane Doe,

v.

KAISER FOUNDATION HEALTH PLAN, INC.,
Defendant.

**Case No.:**  2:25-cv-02371-JFW-(JPRx)


**EXHIBIT B**

**NOMAD HEALTH** EEOC Right To Sue Letter

A redacted version of Exhibit B is provided for the public record. An unredacted version has been submitted under seal pursuant to Plaintiff's pending Motion to Seal.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Los Angeles District Office**
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

<span style="color:red">REDACTED VERSION (PUBLIC FILING)</span>

**DETERMINATION AND NOTICE OF RIGHTS**

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/02/2024

To: 

Charge No:

EEOC Representative and email:
EEOC INVESTIGATOR 

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By
05/02/2024

**Cc:**
Steven Coger
Nomad Health
335 Madison Ave 5th Floor
New York, NY 10017

Susan T Ye
Littler Mendelson PC
50 West San Fernando Street, 7th Floor
San Jose, CA 95113


Please retain this notice for your records.